UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEAN SIMPSON, INDIVIDUALLY & AS EXECUTRIX OF THE ESTATE OF WILLIAM SIMPSON<br>　Plaintiffs, | :<br>:<br>:<br>:<br>: | CASE NO. 3:15-cv-1859 (VLB) |
| v. | :<br>: | |
| THE UNITED STATES OF AMERICA,<br>　Defendant. | :<br>: | December 1, 2016 |

MEMORANDUM OF DECISION DENYING DEFENDANT'S
MOTION TO DISMISS [Dkt. No. 24.]

I.   Introduction

Before the Court is Defendant United States of America's Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Dkt. No. 24.] Plaintiff Jean Simpson, individually and as executrix of the estate of William Simpson, opposes the Motion. [Dkt. No. 25.] For the reasons discussed below, Defendant's Motion is DENIED.

II.   Factual Background

The facts alleged in the Amended Complaint [Dkt. No. 18 ("Complaint")] are taken as true and construed in the light most favorable to Plaintiff for the purpose of a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

As of September 9, 2013, Frank Defurio ("Defurio") was a patient of the West Haven, Connecticut Veteran's Affairs Hospital ("Hospital") receiving daily doses of methadone. Complaint at ¶¶ 10-11. Defurio had a history of psychological issues including, but not limited to, depression, suicidal ideations, attempted suicide, substance abuse, and paranoia. *Id*. at ¶ 12. On September 9,

1

2013, Defurio arrived at the Hospital appearing "confused, delusional, emotionally unstable, and/or intoxicated." *Id.* at ¶ 15. Hospital staff gave Defurio 100 mg of methadone, which Plaintiff states is "known by Hospital staff to be an intoxicating substance, and the licensed disbursement and protocol for disbursement is regulated pursuant to 42 Code Federal Regulations Part 8." *Id.* at ¶¶ 17-18. Hospital staff then allowed Defurio to leave the Hospital in his own vehicle. *Id.* at ¶ 19.

On September 9, 2013, William Simpson ("Decedent") attended a diabetes support group at the Hospital. *Id.* at ¶ 20. After the support group meeting, Decedent exited the Hospital and walked through a crosswalk to the adjacent parking lot, where he was struck by the motor vehicle driven by Defurio sustaining fatal head trauma. *Id.* at ¶¶ 21-23.

Jean Simpson, Decedent's wife, brought the instant action individually and as executrix of Decedent's estate on December 23, 2015. [Dkt. No. 1.] Plaintiff filed the Amended Complaint on May 26, 2016, in which she asserts that Defendant negligently allowed Defurio to drive after administering him methadone. *Id.* at ¶ 24(N). The Amended Complaint also asserts "the Hospital violated the standard of care to provide the Decedent with a safe environment to receive medical treatment for his diabetes when they directly created the dangerous condition which resulted in Decedent's death on September 9, 2013 on Hospital property, by their negligent treatment of fellow patient, Frank Defurio." *Id.* at ¶ 24(Q). Defendant moved to dismiss the Amended Complaint on July 11, 2016, alleging failure to state a claim pursuant to Federal Rule of Civil Procedure

2

12(b)(6).  [Dkt. No. 24.]  Defendant attacks both the medical malpractice and the negligence claims for lack of probable cause.  *Id*. at 3-5.

Plaintiff clarified in her Opposition that her sole allegation is that the Hospital created "an unsafe environment for the decedent's treatment, through the Hospital's negligent acts regarding the treatment of another patient, Frank Defurio."  [Dkt. No. 25 at 4.]  Plaintiff asserts the Court may decide whether to interpret that claim as one for medical malpractice or for general negligence.  *Id*. at 12.  Defendant's Reply and Plaintiff's Sur-Reply both ultimately characterize Plaintiff's general negligence claim as one for premises liability.  [Dkt. No. 26 at 1; Dkt. No. 27 at 1.]

### III.     Legal Standard

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff" when deciding a motion to dismiss.  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).  A court may, however, "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

3

Viewing the Complaint in the light most favorable to the Plaintiff, the Plaintiff alleges that Hospital negligently created a hazardous condition by administering an intoxicating substance to a patient and allowing the patient to leave the hospital while inebriated and drive on its premises causing the Decedent's death.

IV.    Discussion

Plaintiff asserts the same set of facts could constitute a medical malpractice or a negligence claim.  To determine which classification is appropriate, the court must "review closely the circumstances under which the alleged negligence occurred." *Multari v. Yale New Haven Hospital*, 145 Conn. App. 253, 258 (Conn. App. Ct. 2013).   Connecticut employs a three-pronged test to determine whether a claim sounds in medical malpractice or negligence: a claim sounds in medical malpractice when "(1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." *Multari*, 145 Conn. App. at 258.  Plaintiff alleges the negligence at issue is the Hospital's failure to provide safe conditions while Plaintiff was on Hospital grounds to attend a diabetes support group session not a failure to administer medication sand treat patients properly. Thus the facts alleged do not make out a medical malpractice claim.

By contrast, the duty to provide safe conditions to parties entering a business's property is not of a specialized medical nature - it applies to all

4

businesses inviting people onto their premises.  *Crocker v. Kohl's Dept. Store*, 3:08-cv-1570, 2010 WL 326334, at *2 (D. Conn. Jan. 21, 2010) ("As a business invitee, the Defendant owed the Plaintiff a duty to maintain their premises in a reasonably safe condition.") (quoting *Martin v. Stop & Shop Supermarket Cos.*, 70 Conn. App. 250, 251 (Conn. App. Ct. 2002)).  The fact that Decedent was exiting the Hospital after his diabetes support group session when he was injured underscores the fact that Plaintiff's claim is for ordinary negligence - "the duty owed to any customer to provide a safe facility, not just to patients."  *Trimel v. Lawrence Mem. Hosp. Rehab. Ctr.*, 61 Conn. App. 353, 362-63 (Conn. App. Ct. 2001) (explaining that where a hospital allowed a mentally ill patient to cross a heavily traveled highway on foot without supervision, the action sounded in ordinary negligence rather than medical malpractice) (discussing *Badrigian v. Elmcrest Psych. Inst.*, 6 Conn. App. 383 (Conn. App. Ct. 1986)).

  Plaintiff does not allege the diabetes support group Decedent attended at the Hospital was in any way negligently run.  Defendant is instead being sued as the entity with control over the premises where Plaintiff was injured - not in its capacity as a medical provider.  *Multari*, 145 Conn. App. at 259-60 (finding plaintiff did not sue defendant hospital in its capacity as a medical provider where plaintiff alleged defendant negligently "creat[ed] a dangerous condition" by not ensuring plaintiff safely exited the hospital with her granddaughter, the patient).

   Moreover, neither the Plaintiff nor her Decedent can maintain a medical malpractice claim.  While the Court has not found any cases in this district or this state deciding who has standing to bring a medical malpractice claim, general

5

principals of standing and one case of professional liability decided by the Connecticut Appellate Court lead this court to conclude that the plaintiff lacks standing to assert a medical malpractice claim against the Defendants in her individual capacity.

The Connecticut Appellate Court has held: "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." *Electrical Contractors, Inc. v. Dept. of Ed.,* 303 Conn. 402, 411, 35 A.3d 188 (2012) (internal quotation marks omitted.). Relying on *Electrical Contractors,* the Connecticut Appellate Court held in *Litvack v. Artusio,* 137 Conn. App. 397 (2012) that a daughter lacked standing to bring a legal malpractice action against the attorney of her deceased father for his failure to substitute her as executrix of her father's estate in an action for money damages, allowing the case to be dismissed with prejudice causing her personal financial injury. "[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." *Stowe v. Smith,* 184 Conn. 194, 196, 441 A.2d 81 (1981). The interest in the cause of action for professional negligence emanates from the professional relationship through which the professional service is rendered. *Multari*, 145 Conn. App., supra. Only the client or, in this case, the patient has a legal or equitable right, title or interest in the subject

matter of the controversy, namely the efficacy of the professional services rendered.

Further, in order to maintain a medical malpractice suit in Connecticut, the Plaintiff must have filed a good faith letter from a physician opining that Defendants' conduct failed to meet the requisite standard of care.  Conn. Gen. Stat. § 52-190a.

Plaintiff lacks standing to maintain a medical malpractice claim against the Hospital; and even if she did have standing, she failed to obtain the prerequisite good faith letter.  As a consequence of these deficiencies and the facts alleged by the Complaint, the Court concurs with the parties' apparent consensus that the Complaint sounds in negligence.  The Court accordingly construes the Complaint as alleging negligence, specifically premises liability.

    a. <u>Sufficiency of Plaintiff's Negligence Claim</u>

To hold a defendant liable for injuries sustained on defendant's premises, the injured party must establish: "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect, and (3) that such defect had existed for a sufficient length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it."  *Crocker*, 2010 WL 326334 at *2 (quoting *Martin*, 70 Conn. App. at 251; *Dimmock v. Lawrence & Mem. Hosp.*, 286 Conn. 789, 812 (2008) (same).  In addition, as with all negligence claims, Plaintiff must establish "that the defendant's conduct legally caused the injuries," including actual causation and proximate causation.  *Weigold*, 81 Conn. App. at 354.  "The test for [actual] cause in fact is, simply, would the injury have occurred were it not for the actor's

7

conduct." *Paige v. St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 25 (1999). The test for proximate cause is "whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." *Id*. at 25. For proximate cause to exist, the causal connection "must be based upon more than conjecture and surmise." *Id*. at 26.

Plaintiff asserts the defect on Hospital property was Defurio, who was released from the Hospital and allowed to drive after having been administered methadone while "visibly delusional." [Complaint at ¶ 25.] Plaintiff alleges Hospital staff "knew that methadone, especially when combined with other medications, causes dizziness, drowsiness, hallucinations, and other side effects that impair an individual's ability to operate a motor vehicle," and accordingly knew or should have known Defurio presented a safety "defect" while on Hospital property. *Id*. at ¶ 24(I). As to the third element of premises liability, Plaintiff does not explicitly allege how long Defurio was on Hospital property after ingesting methadone, or whether Defendant had sufficient time to discover and remedy the "defect" Defurio presented. However, construing the Amended Complaint in the light most favorable to Plaintiff, Plaintiff appears to reason that because Hospital staff administered methadone and saw Defurio's delusional state, Defendant could have made certain that Defurio had someone to drive him home or stayed at the Hospital until he was mentally fit to drive. *Id*. at ¶ 24(J) (stating Defendant was "negligent in that it did not require Frank Defurio to wait a period of time after being dispensed methadone, and before being allowed to operate a motor

8

vehicle, to assess potential side effects, given the intoxicating nature of methadone, and the mental state of Frank Defurio on that day").

Plaintiff claims if Hospital staff had not "encouraged" Defurio to leave the Hospital "immediately after ingestion" of methadone, Defurio would not have left the Hospital at that time, driven his vehicle, or collided with Decedent. [Complaint at ¶¶ 24(L), (O).] The plaintiff in *Weigold v. Patel* raised a similar argument. 81 Conn. App. at 357. In *Weigold*, plaintiff was killed in a vehicle accident with a driver who had fallen asleep at the wheel due to medication that made her drowsy. *Id.* at 357. Plaintiff sued the psychologist who prescribed the medication, arguing if the psychologist had warned the patient not to drive after taking the medication, the patient would not have done so, and would not have collided with the decedent. *Id.* at 357. The Court found no evidence that the patient would have heeded the psychologist's instruction not to drive, given the patient's history of falling asleep during the day, sometimes while driving. *Id.* at 357. The Court found the patient was well aware of the risk she would fall asleep while driving and chose to drive anyway, and concluded "the proximate cause of the decedent's injuries was the patient's operating her motor vehicle despite knowing that she was prone to falling asleep at the steering wheel, not the defendants' failure to tell her not to drive." *Id.* at 357 (citing *Haesche v. Kissner*, 229 Conn. 213 (1994) (holding a failure to warn is not the proximate cause of an injury when the person who caused the injury knew the risks and acted anyway).

Similarly, Plaintiff in this case alleges Hospital knew that Defurio had a "history of abusing substances contra-indicated with methadone." [Complaint at

9

¶ 24(G).] Plaintiff also alleges Defurio appeared "confused, delusional, emotionally unstable, and/or intoxicated" when he arrived at the Hospital the morning of September 9, 2013. *Id*. at ¶ 15

The facts alleged in the instant complaint are distinguishable from those in *Weigold*. In that case, unlike this one, the defendant was unaware of the driver's impaired state immediately prior to the accident. The temporal proximity of the physician's conduct and the accident allegedly caused by that act or omission are too tangential to establish proximate cause. Here, the Complaint alleges that the Hospital discharged Defurio knowing that he was still impaired and that he did not have an escort. The Complaint also alleges that shortly after Defurio was discharged he hit the Plaintiff's decedent with his motor vehicle causing his death. In essence, the Plaintiff alleges that the Defendant failed to stabilize Defurio before allowing him to leave, and it was therefore reasonably foreseeable to the Defendant that Defurio posed an unreasonable risk of harm to others on and around the Hospital premises.

To consider whether Defurio would have heeded advice from the Hospital staff not to exit the premises or drive before being released to so do, or whether the intoxicating properties of methadone constitute an impermissible intoxicant, dive into the realm of "conjecture." *Paige,* 250 Conn. at 26. At the motion to dismiss stage the Court must assume all well-plead facts as true. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). While "responsibility for the patient's poor judgment cannot be attributed to the defendants on the basis of their therapeutic relationship," the Complaint alleges sufficient facts which call the judgment and

10

comparative fault of the Hospital into question, and is sufficient to overcome the motion to dismiss.  *Weigold*, 81 Conn. App. at 357; *see also Haesche*, 229 Conn. at 213; *Wu v. Town of Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987).

V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

                                                                               /s/                              
                                                                    Hon. Vanessa L. Bryant
                                                                    United States District Judge

Dated at Hartford, Connecticut: December 1, 2016